NEW ORLEANS NAT. BANKING ASSOCIATION *v.* P. S. WILTZ & Co. and another.* ·

*(Circuit Court, E. D. Louisiana.   July, 1881.)*

1. CAPITAL STOCK.
    Stock in an incorporated company in Louisiana is property, and not a credit; and it is transferable and salable by actual contract thereto, and a delivery of the certificate.
    *Smith* v. *Slaughter-house,* 30 La. Ann. 1378.

2. SAME—PLEDGE—LIENS AND PRIVILEGES.
    It can, therefore, be pledged by contract and the delivery of the certificate, and when pledged in this manner the pledgee takes it subject to all the liens and privileges the law puts upon it; but no lien or privilege can attach except by or under operation of law.

3. GENERAL INCORPORATION LAW.
    The charter of a company, formed under the general incorporation law, cannot create any privilege unknown to the law of the state, unless the power was expressly given in the general law, which it is not.

In Equity.

*John D. Rouse* and *William Grant,* for complainant.

*Alfred Grima,* for defendant insurance company.

PARDEE, C. J.   The bill of complaint herein sets forth that the said complainant was, on the twenty-eighth of February, 1873, the holder and owner of a certain promissory note drawn to their own order, and indorsed by said defendants P. S. Wiltz & Co., for the sum of $12,000, and payable 90 days after date; that in order to secure said note the said P. S. Wiltz & Co. pledged to complainant 50 shares of the capital stock of the defendant the New Orleans Mutual Insurance Association, and delivered the certificate of such stock to complainant, the said shares of stock then standing in the name of said P. S. Wiltz & Co. upon the books of said association; that said note was renewed several times, the said stock always remaining in possession of complainant as a security for said debt, until on the eighth of December, 1873, the amount due on said note was evidenced by the note sued on herein for $12,000, dated December 8, 1873, and payable 30 days after date, drawn by said P. S. Wiltz & Co. to their own order, and by them indorsed; that said defendant the insurance association had notice of said pledge, and that it has in its hands a large amount of accrued dividends due on said shares of stock; that complainant has demanded from said association and

*Reported by Joseph P. Hornor, Esq., of the New Orleans bar.

requested the said association to permit the transfer of said stock in order to realize thereon, as the cashier or president of complainant bank was authorized, under said act of pledge, to make such transfer, but that the said insurance association declined to accede to the complainant's demands. And complainant, therefore, prays that an account be taken of the amount due it by said defendants P. S. Wiltz & Co.; that it be decreed to have a lien and right of pledge upon the said shares of stock, and the accrued dividends thereon; that the said stock be ordered to be sold, and the insurance association directed to make the necessary transfer thereof upon its books, and that complainant be paid by preference the amount realized by the said sale, together with the amount of said accrued dividends, to be applied by complainant in extinguishment of the said debt of Wiltz & Co.

The defendant the New Orleans Insurance Association answered, denying the validity of the act of pledge herein declared on, upon the grounds that the same was informal, and that it had not been recorded as required by the laws of this state, and that it conferred no privilege on the said stock; that said insurance association had not been notified of the said pledge. They further answered that they had refused to make the transfer of stock and dividends claimed by complainant, upon the ground that the said defendants P. S. Wiltz & Co. were indebted to them, and that under their charter no transfer of stock can be made nor dividends thereon paid while the holder of said stock is indebted unto the said insurance association; that on the thirteenth day of April, 1874, the said insurance association obtained a judgment against said Wiltz & Co. for the sum of $20,000 and interest, and that said shares of stock were seized under execution thereon and sold on May 21, 1878, and realized the sum of $1,150.15; that they had a lien upon said stock to secure the said indebtedness of Wiltz & Co. to them. They further aver that the president and several of the directors of complainant corporation were directors in said insurance association, and had full notice of said provisions of charter, and of the indebtedness of Wiltz & Co. to the insurance association. They admit that the sum of $925 accrued as dividends upon said stock during the years 1873, 1874, 1875, 1876, 1877, and 1878. A general replication was filed to this answer by complainant, and the defendants P. S. Wiltz & Co. having failed to answer, the bill has been taken as confessed as to them.

The proofs and admissions in the record show the indebtedness of P. S. Wiltz & Co. to complainant as alleged, and that the above-described shares of stock were pledged to complainant, and the certificate of such

shares of stock delivered to complainant, as set forth in bill of complaint herein. It also appears that said Wiltz & Co. were indebted unto said insurance association in the sum of $20,000, with interest, and that on the thirteenth of April, 1874, said association obtained judgment against said Wiltz & Co., in the fifth district court for the parish of Orleans, for said sum, *but without any recognition of a lien upon said stock;* that subsequently said stock was apparently sold, as set up by said association in the answer herein, but that neither the said insurance association, nor the sheriff, nor the purchaser at said sale, had possession of the certificate of said shares of stock, which always remained under the control and in the possession of complainant; and that the transfer of said stock to the purchaser at said sale was made without the authority or consent of said P. S. Wiltz & Co., or of complainant. The charter and amended charter of the insurance company are shown, as set forth in the answer.

The counsel in this case have gone over a good deal of ground, and have filed very able and exhaustive briefs on each side. The view I take of the case does away with the necessity of examining all the authorities cited.

The case arises under Louisiana law, and many of the cases cited are not in point. Stock in an incorporated company in Louisiana is property, not a credit. *Smith* v. *Slaughter-house,* 30 La. Ann. 1378. It is transferable and salable by actual contract thereto, and a delivery of the certificate. *Id.*

It can, therefore, be pledged by contract and the delivery of the certificate. *Blouin* v. *Hart,* 30 La. Ann. 714; *Factors' & Traders' Ins. Co.* v. *Dry Dock,* 31 La. Ann. 149. When pledged in this manner, the pledgee takes it subject to all the liens and privileges the law puts upon it. No privilege can attach except by or under operation of law. Where the law gives no privilege, none can be given by contract or consent. *Succession of Rousseau,* 23 La. Ann. 3; *Hoss* v. *Williams,* 24 La. Ann. 568. The insurance company was formed under the general incorporation law of the state by public act passed, before a notary. It has no legislative charter. This charter could not create any privilege unknown to the law of the state, unless the power were expressly given in the general law, which it is not. The general law authorizes corporations to "even enact statutes and regulations for their own government, provided such statutes and regulations be not contrary to the laws of the political society of which they are members." La. Civ. Code, art. 433.

But this cannot be construed to authorize a corporation by char-

ter, or by by-law or statute, to create a privilege on property actually and necessarily within commerce.

The case of *Bryon* v. *Carter*, 22 La Ann. 98, is in point. In that case the by-law of the bank was of as much force as the charter, in this: because the act of 1855, § 8, in relation to free banks, gave authority to the corporation to direct the manner of the transfer of bank stock on its books, and it is noticed that the by-law in that case is almost identical with the provision relating to transfer in this. See, also, *Bulland* v. *Bank*, 18 Wall. 589; *Bank* v. *Lanier*, 11 Wall. 369.

In the case of *Driscoll* v. *Bradley Manuf'g Co.*, 59 N. Y. 96, where a lien was claimed under a by-law of the corporation, the court lays down this proposition: "Hence, if the defendant is to maintain this by-law, it must point out the authority, either in its articles of association, and show that they are authorized by law, or in some statute."

I take it that the law in this state is the same. The insurance company, to prevail in this case, must show its authority for the restrictive provision in its charter in some statute or law of the state.

In addition to this, under article 123 of the Louisiana constitution of 1868, in force at the time of the transactions under consideration, the privilege claimed by the insurance company should have been recorded, to have had any effect against third persons. And it should have been recorded, too, in the registry of mortgages and liens and privileges. L. C. C. art. 3388. Recording in any other book would not preserve the privilege. See Louque's Dig. 613, and authorities there cited.

The evidence filed only shows a general recordation of the charters of the insurance company in the society books kept for that purpose. See certificates of recorder attached to charters on file.