348 So.2d 153 (1977)
AVOYELLES TRUST & SAVINGS BANK, Plaintiff-Appellant,
v.
The ESTATE of Marvin N. LILIEDAHL through Jo Ann Lanell Cooley Liliedahl, Administratrix, et al., Defendants-Appellees.
No. 5972.
Court of Appeal of Louisiana, Third Circuit.
June 30, 1977.
Rehearing Denied August 1, 1977.
Writ Refused October 28, 1977.
*154 McCollister, Belcher, McCleary, Fazio, Mixon, Holliday & Jones by Donna D. Fraiche, Baton Rouge, James N. Lee, Bunkie, for plaintiff-appellant.
Harold J. Brouillette, Marksville, Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell by Joseph Onebane, Lafayette, for defendant-appellee.
Before WATSON, FORET and HEARD, JJ.
HEARD, Judge.
This case concerns the effect and enforceability of a corporate stock restriction included in the Articles of Incorporation and imprinted on a stock certificate representing 5,000 shares of Liliedahl & Mitchel, Inc. stock which were pledged to secure two promissory notes issued by the president-stockholder of the corporation as evidence of his individual indebtedness to Avoyelles Trust & Savings Bank, appellant herein. The debts evidenced by the promissory notes described as follows:
1. Promissory note dated November 16, 1975, executed by Marvin N. Liliedahl in favor of Avoyelles Trust & Savings Bank in the original amount of $43,500.00, bearing interest at the rate of eight (8%) percent per annum from date until paid plus twenty-five (25%) percent attorney's fees on which there was allegedly an unpaid principal balance as of the date of the filing of this action of $22,125.27, plus eight (8%) percent interest from March 10, 1976, and twenty-five (25%) percent attorney's fees and,
2. Promissory note dated April 4, 1975, executed by Marvin N. Liliedahl in favor of Avoyelles Trust & Savings Bank in the original amount of $50,000.00, bearing interest at the rate of ten (10%) percent per annum from date until paid plus twenty-five (25%) percent attorney's fees, said note being allegedly due in the full amount of the principal, interest and attorney's fees at the time of the filing of this action.
The appellant-bank, as plaintiff, filed suit on July 14, 1976, in the Twelfth Judicial District Court in and for the Parish of Avoyelles, Louisiana, against the Estate of Marvin N. Liliedahl.
Pursuant to a money judgment rendered August 10, 1976, in which the Twelfth Judicial District Court recognized a pledge of the above mentioned shares of stock, a writ of fieri facias was issued by the Twelfth Judicial District Court, Parish of Avoyelles, Louisiana, on October 28, 1976, directed against the Estate of Marvin N. Liliedahl, ordering the Sheriff of Avoyelles Parish to seize and sell the following described property.
"Five thousand (5,000) shares of Liliedahl & Mitchel, Inc. common stock represented by Certificate No. 1, dated April 1, 1971, issued in the name of Marvin Nils Liliedahl."
Advertisement of a judicial sale of said property appeared in the November 25, 1976 issue of the Weekly News, the official journal of Avoyelles Parish, giving public notice that the sale of said property was scheduled for Wednesday, December 8, 1976, at the front door of the Avoyelles Parish Courthouse.
Subsequent to the publishing of the above described notice, but prior to the sale of said stock, a petition of intervention was filed by Mr. Roland Mitchel, individually, and as President of Liliedahl & Mitchel, Inc., appellees herein, seeking a temporary restraining order and preliminary and permanent injunction to enjoin the Sheriff of Avoyelles Parish from conducting the judicial sale or from otherwise disposing of the above described stock.
The suit to enjoin, as prayed for in the petition for intervention, was heard December 14, 1976. The evidence presented included affidavits, exhibits, and stipulations of counsel as well as legal memoranda. No testimony was heard.
*155 The basis for the injunction prayed for by intervenor-appellee was that the above mentioned stock certificate seized under writ of fieri facias and Article VIII of the Articles of Incorporation of Liliedahl & Mitchel, Inc. bore the following restriction:
"No shareholder shall be permitted to sell his stock until he shall have first given written notice to the corporation of his intention to sell the same, stating in such notice the number of shares he or they desire to sell and transfer, the bona fide price at which he or they propose to transfer the same and the name of the person to whom the same is to be sold and transferred. The corporation shall then have an option for a period of thirty (30) days after the notice has been given to purchase the stock so offered for sale at the price stated in the notice. If the corporation desires to accept this option, it must agree to purchase all of the stock offered for sale and it must signify its acceptance in writing to the stockholder who declares to sell the stock. The giving of and the acceptance of the option by the corporation shall be by means of registered mail. The beginning of the thirty (30) day period shall commence at the hour and minute of the date the registered letter of notice is posted and shall expire seven hundred twenty (720) hours from the time of posting. In the event the corporation fails to exercise its option to purchase in the manner hereinabove set forth then in such event the other stockholders shall be notified in like manner as hereinabove provided for notice to the corporation and the other shareholders shall then have the right of purchasing at said price the stock desired to be sold in the proportion that the amount of stock owned by each in this corporation bears to the total issued stock and shall notify by registered mail the shareholder so desiring to sell of their intention to purchase within ten (10) days of receiving notice of said intended sale and transfer. In the event any stockholder or stockholders do not express their desire to purchase said offered stock, then the other stockholders or stockholder may exercise said privilege in the manner last above herein set forth. The provisions of this paragraph shall not apply to any sale or other transfer from a stockholder to the following relatives: ascendants and descendants, brothers, sisters, husbands and wives. This article shall be printed on all stock certificates issued by this corporation and the provisions of the same may be waived in writing by all of the shareholders of this corporation."
On December 16, 1976, the Opinion of the Court on Application for Preliminary Injunction was rendered in favor of intervenors-appellees. Judgment was stipulated to apply as to the permanent injunction as well, and the same was signed January 4, 1977. From this judgment, the plaintiff-appellant brought the present appeal.
Appellant contends:
A. That the stock certificate adjudged legally pledged to appellant can be judicially sold to satisfy debt.
1. The only sale or transfer prohibited by the stock restriction is a voluntary sale.
2. A judicial sale of stock to satisfy a pledge is not a voluntary sale as contemplated by the restriction.
3. The legal notice of the restriction extended only to potential purchasers, not to pledges of the stockholders.
B. That the philosophic basis for stock transfer restrictions relative to small business corporations is not a valid basis for the imposition of an injunction on an involuntary sheriff's sale.
C. That a permanent injunction should not have issued in this case without a full evidentiary showing of irreparable injury.
D. In the alternative, should the sheriff not be allowed to continue with the sale, that the shareholder should be made to pay the debt to the appellant.
Louisiana has granted corporations the right to restrict the transfer of stock, provided that the restrictions placed on such transfers are plainly printed on the stock certificate, or sufficient information is *156 given of the restriction on the certificate so as to alert third parties. See LSA-R.S. 12:57(F). These restrictions are to be strictly construed, as they unduly restrict the free-flow of commerce. Cimo v. National Motor Company of Louisiana, Inc., 237 So.2d 408 (La.App. 4th Cir. 1970); Phillips v. Newland, 166 So.2d 357 (La.App. 3rd Cir. 1964).
The case before the court presents a res nova issue in Louisiana: whether a restriction on the right to sell stock applies to the judicial sale of stock pledged to secure a note. The Courts of Louisiana have been presented with similar situations in the past, but never had to pass on the specific issue, as it was generally found that the restriction did not apply to the stock in question. For example, in Pitot v. Johnson, 33 La.Ann. 1286 (1881), the court found that a restriction prohibiting the sale of stock in a corporation while the stockholder was indebted to the corporation did not apply to the forced sale of pledged stock since the stock had been pledged before the stockholder indebted himself to the corporation. The court indicated that the sale might have been prohibited had the debt been incurred at the time of the pledge, but refused to consider the issue. See also New Orleans National Banking Association v. Wiltz, 10 F. 330 (E.Dist. of La. 1881), a case in equity, where the Federal Court refused to decide the issue as it could find no provision in Louisiana law authorizing the restriction.
Louisiana courts have held that stock restrictions are not applicable to transfers of stock to a wife at the dissolution of the community. Messersmith v. Messersmith, 229 La. 495, 86 So.2d 169 (La.1956). Appellant argues that the present situation is analogous to the situation in Messersmith, in that the transfer of stock is involuntary. However, Messersmith was merely a recognition that the wife had owned one-half of the stock from the date of purchase. In the present situation, the bank is not seeking to be recognized as owner of the stock, it is simply attempting to enforce a right of sale under the laws of pledge.
Appellant points out that other jurisdictions have held that stock restrictions are only applicable to voluntary transfers, McDonald v. Farley & Loetscher Mfg. Co., 226 Iowa 53, 283 N.W.2d 261 (1930); others have carved out specific exceptions to the restrictions for example, passage of title by succession, Taylor's Administrator v. Taylor, 301 S.W.2d 579 (Ky.Sup.Ct.1957); restrictions are not applicable to forced or judicial sales, Dobry v. Dobry, 262 P.2d 691 (Okl.Sup.Ct.1953); restrictions not applicable in sale of stock at bankruptcy, Re Trilling and Montague, 140 F.Supp. 260 (E.D.Pa. 1956). The reasoning of the court in the last case was that the restriction was present to allow shareholders to protect themselves from an unwelcome purchaser and since the sale of the stock had to be advertised, the stockholders could protect themselves by becoming the highest bidder.
In a case that is on all fours with the present case, the New York Court held that the restriction did apply to a sale under a pledge agreement, and that the stock had to first be offered to the corporation before a judicial sale could be held. Estate Funds v. Burton-Fifth Ave. Corp., Sup., 111 N.Y.S.2d 596 (1952). The Florida Supreme Court in Weissman v. Lincoln Corporation, 76 So.2d 478 (Fla.1954), held that the remedy in a similar situation was for the stockholders to pay the amount of the debt. (The restriction in Weissman included prohibition of pledge, as well as sale of stock.)
It can be argued that the corporation could have prevented the present situation by forbidding stockholders the right to pledge their shares. However, since restrictions of trade are not favored in law, it would perhaps be wise not to hold the corporation to such a duty.
The bank could also have foreseen such a situation when it accepted the pledge, and it was clearly warned of the prohibition by the warning on the certificates. It would seem that the New York Court in Estate Funds had the correct solution.
Appellant contends that at no time did the Intervenors demonstrate that irreparable harm would result because of the foreclosure *157 of the pledged stock and the transfer by sheriff's sale. The trial court found that the only stock which was ever issued by the corporation was the certificate pledged by Marvin Liliedahl for 5,000 shares and the certificate issued to intervenor Roland Mitchel for 1,580 shares. The corporation obviously intended a closed unit or corporate entity between themselves, their heirs and spouses. C.C.P. Art. 3601 provides:
"An injunction shall issue in cases where irreparable injury, loss or damage may otherwise result to the applicant. . . ."
The trial court obviously concluded that to protect the closed unit or corporate entity an injunction was necessary. A trial judge has broad discretion in granting an injunction. Picard v. Choplin, 306 So.2d 918 (La.App. 3rd Cir. 1975).
For the foregoing reasons, the judgment of the trial court is affirmed. All costs are to be paid by appellant.
AFFIRMED.
WATSON, J., dissents and assigns written reasons.
WATSON, Judge, dissenting:
This appeal raises the issue of whether the restriction against sale of corporate stock authorized by LSA-R.S. 12:57(F) applies to a judicial sale of stock pledged to secure payment of promissory notes. The deceased, Liliedahl, pledged corporate stock to the Avoyelles Trust & Savings Bank. The stock was subject to a restriction, printed on the certificate and contained in the articles of incorporation, requiring a shareholder to first offer his stock for sale to the corporation and other stockholders before selling it.
The bank filed suit against the succession of Liliedahl, obtained a monetary judgment, had a writ of fi.fa. issued and the sheriff of Avoyelles Parish proposed to sell the stock pursuant to advertisement.
Mitchel, another stockholder, acting individually and as president of the corporation, sought and obtained an injunction against the sale of the stock on the basis of the restriction and this appeal followed.
The majority affirms on the basis that the injunction was necessary to protect the corporation from invasion by an unknown or unfriendly stockholder. In effect, the majority holds that the restriction against transfer applies to judicial sales as well as to voluntary sales.
I disagree.
Restrictions on the transfer of stock are strictly construed, since they restrict the free flow of commerce. The Third Circuit has specifically recognized this rule in connection with stock carrying a similar restriction against sale without prior offer to the corporation or the other stockholders. Phillips v. Newland, 166 So.2d 357 (La.App. 3 Cir. 1964), writ refused. See also Cimo v. National Motor Club of Louisiana, Inc., 237 So.2d 408 (La.App. 4 Cir. 1970). If restrictions on transfers are strictly construed, such a restriction should not be extended to cover judicial sales as well as voluntary transfers. Defendants argue for a liberal interpretation of the restriction and plaintiff a strict interpretation. Under Phillips, plaintiff would prevail.
Other states have followed the rule that restrictions are not applicable to various non-voluntary transfers. The majority cites a number of cases which recognize the possibility of non-voluntary transfer.
If the stockholders had wished to prohibit a pledge of the stock and the legal consequences, such a provision should have been expressly included in the restriction. Absent a prohibition against pledge, the courts should not supply one.
No prejudice can result to the corporation or the other stockholders. They can protect themselves by bidding in the stock. In other words, they have the right to purchase the stock at judicial sale just as they would under the restriction.
For these reasons, I respectfully dissent.